**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN   DIVISION

| | | |
|---|---|---|
| MAE WRIGHT, ET AL., on behalf of | * | |
| themselves and others similarly situated | * | |
| | * | |
| | * | |
| Plaintiffs | * | |
| | * | NO:4:09CV00065  SWW |
| VS. | * | |
| | * | |
| PULASKI COUNTY | * | |
| | * | |
| | * | |
| Defendant | * | |
| | * | |

## <u>ORDER</u>

Current and past employees of the Pulaski County Regional Detention Facility

("PCRDF") bring this putative collective action against Pulaski County ("the County") pursuant

to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201- 219.  Before the Court is the

County's motion for summary judgment (docket entries #146, #147, #148),  Plaintiffs' response

in opposition and renewed motion for summary judgment (docket entries #160, #161, #162,

#163, #164), the County's reply/response (docket entries #172, #173, #174), and Plaintiffs'

reply/response (docket entry #177).   Also before the Court is the County's motion for

decertification (docket entries #151, #152), Plaintiffs' response in opposition (docket entry

#157), and the County's reply (docket entry #159).  After careful consideration, and for reasons

that follow, the County's motion for summary judgment will be granted as to Plaintiffs' claims

for compensation related to time spent donning uniforms and safety gear and volunteering but

denied as to all other claims, Plaintiffs' motion for summary judgment will be denied, and the

County's motion for decertification will be granted.

## I. Background

Eighty-four named plaintiffs bring this action on behalf of themselves and other past and current PCRDF employees, alleging that for a period beginning three years before this lawsuit began on January 30, 2009, up to the present time, the County has willfully violated the FLSA by failing to compensate them for "(1) the thirty . . . minutes they must come in early before each shift . . . ; (2) the thirty . . . minutes for missed lunch breaks; (3) hours during which . . . the plaintiffs were expected to volunteer; and (4) time spent donning/doffing." Docket entry #157, at 7. Plaintiffs allege that they are similarly classified as hourly employees to be paid straight time (regular pay) for all time worked up to 171 hours and time and one-half for all time worked over 171 hours in a twenty-eight day work period.[1]

## II. Motions for Summary Judgment

The County and Plaintiffs have filed motions for summary judgment.[2] The Court will

_____

[1]It is undisputed that the County is subject to FLSA provisions for public agencies engaged in law enforcement activities, which require it to pay overtime at a rate of one and one-half regular pay to non-exempt employees engaged in law enforcement for all hours worked in excess of 171 hours in a twenty-eight-day work period. *See* 29 U.S.C. § 207(k), 29 C.F.R. § 553.230(b).

[2]Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact;

consider the separate motions together–addressing first, arguments that concern the merits of Plaintiffs' specific claims before turning to those that concern the case as a whole.

### 1.    Thirty-Minute Early Report Period and Missed Lunch Breaks

Plaintiffs claim that the County requires PCRDF employees to report to work thirty minutes early, without compensating employees for the thirty-minute, early-report period.  The County contends that it provides a paid, thirty-minute lunch break to any employee required to report early, which makes up for the early-report period.  Additionally, the County reports that "in most instances," only those employees assigned to PCRDF's housing and intake units are required to report to work thirty minutes early and that thirty-one of the named plaintiffs have never worked in the intake or housing units.[3]

Plaintiffs dispute that the early-report requirement applies only to employees assigned to work in the housing and intake units.  Plaintiff Gerald Kirk, identified by the County as a named plaintiff who has never been required to report early, testifies by affidavit that he was required to report to work thirty  minutes prior to his scheduled shift when he was assigned to work in the PCRDF transport unit.  *See* docket entry #161, Ex. #12.  Similarly, named plaintiff  Ralph Huett testifies that he worked in the PCRDF transport unit from February 2007 to June 2009 and was

---

(2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party."  *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

[3]*See* docket entry #147, at 6.  The County also identifies 5 named plaintiffs who are or have been "employed in a department that does not require reporting 30 minutes before [their] shift begins, but . . . worked in either Housing or Intake for a portion of the period that is claimed in this lawsuit."  Docket entry #147, at 6.

required to arrive at work thirty minutes before his scheduled shift. *See* docket entry #161, Ex. #13.

Named plaintiff Gussie Parham ("Parham"), who works in the PCRDF's intake unit, testifies that he is required to report to work thirty minutes before his shift begins to attend a briefing session. Docket entry #161, Ex. #9 (Parham Dep. at 9). On the subject of lunch breaks, Parham testifies that he was "not allowed" breaks until two or three months before his deposition was taken on August 24, 2009. *Id*. at 8.

In light of the evidence presented, the Court finds that whether PCRDF employees other than housing and intake employees are subject to an early-report requirement and whether employees received a paid, thirty-minute lunch break to offset the early-report period remain genuine issues of material fact.

Next, the County argues:

> If an employee did not receive a thirty minute break during their shift, it is the employee's duty to report such time as having been worked. Pulaski County detrimentally relied on these time sheets in the payment of the Plaintiffs' time. To allow Plaintiffs to benefit from any alleged time in which they said they worked, but did not report, would be unfair and prejudicial to Pulaski County.

Docket entry #173, at 12. Plaintiffs cannot waive entitlement to FLSA benefits by failing to report overtime, and liability under the FLSA does not depend on whether Plaintiffs fulfilled a "duty" to report overtime, but whether the County suffered or permitted Plaintiffs to work uncompensated overtime. *See* 29 C.F.R. § 785.11. An employer "suffers of permits" work if it knows or has reason to believe that work was performed. *Id*. Parham's testimony, which follows, indicates that his supervisor knew that he failed to report the time he spent working during his lunch break:

Q: You say you're not allowed overtime, yet you've been paid overtime?

A: Not for our 30 minute breaks.

Q: Why not?

A: Because we never put in for a 30 minute break on overtime.

Q: Why haven't you put in for it?

A: As a matter of fact, I didn't know that I could.

Q: Did someone tell you that you couldn't?

A: No. And I have a supervisor that she's there.  So if I am doing something that's

not correct, she should inform me of that.

*Id.*

And the following testimony by Plaintiff Bobby Green, identified in the second amended

complaint as a sergeant, indicates that he knew that employees were not taking a thirty-minute

lunch break:

Q:  Is it your testimony here today that you knew some of these deputies were falsifying

the break log?

A:  I knew that some of the deputies had not taken their full 30-minute break.

Q:  But that they were writing down 30 minutes?

A:  Well, when you get the break log the next day, I mean, you know, you get it in at the

end of your day, and you see that they put a full 30 minutes, and you know that person,

you know,  wasn't gone 30 minutes when they left out, you know.  I knew they didn't

take a full 30 minute, but . . .

Q:  Well, did you report that to anybody?

5

A:  No.

Q:  Why not?

A:  I mean, I looked at it.  It was their choice.  You know, they were given a break, and

they, you know, for the reasons I stated, you know, they didn't take a full 30.

Q:  Did your lieutenant know they hadn't taken a full 30?

A:  I don't think so.

Docket entry #185, Ex. #1 (Green Dep. at 47-48).  In light of the foregoing testimony, the Court

finds that whether the County knew or had reason to know that PCRDF employees worked

during lunch breaks without compensation remains a question of fact.

Next, the County argues that even if  "Plaintiffs could have a cause of action regarding

the 30 minutes at issue in this case, the Plaintiffs have been duly compensated for their time."

Docket entry #147, at 9.  The County reports that it made errors in calculating overtime, which

resulted in overpayments.  Plaintiffs acknowledge instances when they received credit for more

hours than they actually worked, but they maintain that they are still due overtime pay.

Pursuant to 29 U.S.C. § 207(h)(2), the FLSA permits an employer to credit certain

payments against any overtime due an employee.  Here, however, the Court is without sufficient

information to find that the County is entitled to summary judgment based on offsets against

liability that may be available under § 207(h)(2).[4]

---

[4]The County presents charts, which they contend show the amount of overtime paid to
each plaintiff for the time period in question.  The County argues: "As evidenced by the charts
and based on the reasoning used by the [PCRDF] in calculating overtime compensation, it is safe
to assume that all named Plaintiffs were paid in excess of what they were entitled to received
pursuant to the FLSA."  Docket entry #183, at 11.  The County compiled the charts from payroll
records that were provided to Plaintiffs in response to Freedom of Information Act requests.
Plaintiffs dispute the accuracy of the County's charts and point out specific disparities between

Finally, in support of their renewed motion for summary judgment, Plaintiffs contend that the testimony presented thus far is sufficient to establish a pattern and practice of uncompensated overtime and liability under the FLSA.   The Court disagrees.   The record contains the testimony of only a small fraction of the named plaintiffs, and while the evidence presented creates a question of fact on the issue of liability, it does not permit the Court to find the County liable as a matter of law.

### 2.        Donning Uniforms and Safety Gear

Plaintiffs seek compensation for time spent donning uniforms and safety gear.[5]   The County acknowledges that PCRDF officers are required to wear a uniform and safety gear to work, and they are not paid for time spent donning these items.   The County asserts, however, that the time a PCRDF officer spends donning a uniform and safety gear is not compensable under the FLSA.

The Supreme Court has defined "work" under the FLSA as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."   *Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598, 64 S. Ct. 698, 703 (1944).   But not all work-

_____

the charts and source documents.

[5]In the second amended complaint, Plaintiffs allege that they "have not been paid for uniform maintenance and donning and doffing uniforms."  Docket entry #46, ¶ 95.  However, the record is void of allegations or evidence regarding uniform maintenance or doffing, and it appears from the affidavits of  Plaintiffs Lewis Gilbert, Gerald Kirk, and Ralph Huett, that Plaintiffs' claims relate solely to pre-shift donning of uniforms and safety gear and have nothing to do with uniform maintenance or doffing (removing) uniforms. *See* docket entry #161, Exs. 11, 12, 13 ("At the Pulaski County Sheriff's Department, the donning and doffing of uniforms is required to take place *before an employee begins their shift*, and this time is not compensated.").

related activities constitute work that must be compensated under the FLSA.  Under the Portal-to-Portal Act amendments to the FLSA, employers are not required to compensate employees for activities which are "preliminary to or postliminary" to the principal activity the employee is hired to perform.  *See* 29 U.S.C. § 254(a)(2).   In *Steiner v. Mitchell*, 350 U.S. 247, 76 S. Ct. 330 (1956), the Supreme Court considered whether particular donning and doffing activities of workers in a battery plant were compensable, "principal" activities or non-compensable "preliminary or postliminary" activities.  In framing the question presented in *Steiner*, the Court pointed out the employees' unique labor conditions:

> The precise question is whether workers in a battery plant must be paid as a part of their 'principal' activities for the time incident to changing clothes at the beginning of the shift and showering at the end, where they must make extensive use of dangerously caustic and toxic materials, and are compelled by circumstances, including vital considerations of health and hygiene, to change clothes and to shower in facilities which state law requires their employer to provide, or whether these activities are 'preliminary' or 'postliminary' within the meaning of the Portal-to-Portal Act and, therefore, not to me including in measuring the work time for which compensation is required under the Fair Labor Standards Act.

*Steiner*, 350 U.S. at 248, 76 S. Ct. at 331.   The *Steiner* Court deemed activities performed before or after a regular work shift compensable under the FLSA if those activities are an "integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by [the Portal-to-Portal Act]."  *Steiner*, 305 U.S. at 256, 76 S. Ct. at 335.  And after noting that changing clothes "under normal conditions" was not at issue, *see Steiner*, 350 U.S. at 249, 76 S. Ct. at 332, the Court found that under the facts presented,  "it would be difficult to conjure up an instance where changing clothes and showering are more clearly an integral and indispensable part of the principal employment . . . . " *Steiner*, 305 U.S. at 256, 76 S. Ct. at 335.

8

Following *Steiner*, the Department of Labor ("DOL") issued regulations that provide additional clarification about the types of donning and doffing activities that require compensation under the FLSA.  One such regulation states:

> Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance. If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes *on the employer's premises at the beginning and end of the workday* would be an integral part of the employee's principal activity. On the other hand, if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a "preliminary" or "postliminary" activity rather than a principal part of the activity.

29 C.F.R. § 790.8(c)(emphasis added).   The DOL has consistently declared that donning and doffing work gear is not compensable when, unlike the situation in *Steiner*, an employee can perform his or her principal employment activities without donning and doffing at the workplace.  *See* Wage & Hour Adv. Mem. No 2006-2 (May 31, 2006).[6]

Although the Eighth Circuit has not addressed the issue, the Ninth Circuit and several district courts have concluded that where a law enforcement officer is able to don and doff his or her uniform at home, the time spent donning and doffing is not compensable under the FLSA. See *Bamonte v. City of Mesa*, 598 F.3d 1217 (9th Cir. 2010); *Constant v.* Webre, 2010 WL 2243641, at *3 (E.D. La. 2010); *Dager v. City of Phoenix*, 646 F. Supp. 2d 1085 (D. Ariz. 2009), *aff'd,* 2010 WL 2170992 (9th Cir. May 28, 2010); *Bamonte v. City of Mesa*, 2008 WL 1746168 (D. Ariz. 2009), *aff'd*, 598 F.3d 1217; *Martin v. City of Richmond*, 504 F. Supp. 2d 766 (N.D.

---

[6]The memo, available at http://www.dol.gov/whd/FieldBulletins/Advisory Memo 2006_2.pdf., states in part as follows: "It is our longstanding position that if employees have the option and ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the plant."

Cal 2007); *Abbe v. City of San Diego,* 2007 WL 414669 (S.D. Cal. Nov. 9, 2007); *Bagrowski v. Maryland Port Authority,* 845 F. Supp. 1116, 1121 n. 6 (D. Md.1994); *see also Perez v. Mountaire Farms, Inc.,* 610 F. Supp. 2d 499, 519 (D. Md. 2009)(donning and doffing compensable, despite a take-home option, because the employees were "required by law, policy, and the nature of the work to don and doff . . . at work."); *Lee v. Am-Pro Protective Agency, Inc.,* 860 F. Supp. 325, 326 (E. D.Va.1994)(finding donning and doffing uniforms compensable where uniforms *could not* be taken from the workplace and guards were required to report for work in uniform).

In this case, sworn PCRDF officers are required to wear uniforms while acting in their official capacities, and they may choose between Class A or Class B uniforms. Class A uniforms are dress uniforms, commonly worn on special occasions, and most PCRDF officers choose to work in Class B uniforms, which consist of a six-pocket trouser and field-style shirt. In addition to a uniform, PCRDF jail deputies are required to wear the following safety equipment: handcuffs, OCR (pepper) spray, and a radio. In addition to the foregoing items, jail deputies assigned to the housing unit must wear a body alarm.

It is undisputed that PCRDF officers are permitted to don their uniforms at home before coming to work. Likewise, deputies are permitted to don safety equipment at home, with the exception of a radio and body alarm, which are issued when employees report to work. PCRDF deputy Eugene Rouse testifies that it takes him no more than five minutes to don his uniform at home and three seconds to put on his utility belt, which holds his OCR spray and handcuffs. Docket entry #183, Ex. F (Rouse Dep., at 34-35). Rouse compares the time required for donning his utility belt to the time it takes to fasten a seat belt. As for his radio and body alarm,

Rouse picks those items when he reports for duty  "at switch-out right after briefing."  Rouse

Dep. at 35.

It is undisputed that the County does not require PCRDF employees to don or doff their

uniforms and safety gear at work, and the record contains no evidence that the nature of

Plaintiffs' work, safety concerns, laws, or anything else necessitates that PCRDF employees don

uniforms and safety equipment at work.  In fact, the evidence indicates that most officers don

their uniforms at home in less than ten minutes.  Under the undisputed facts, the Court finds that

donning a PCRDF uniform and a utility belt holding safety equipment is non-compensable

preliminary activity, which is not an integral and indispensable part of the principal activities for

which PCRDF officers are employed.

Deputies must also wear a radio and body alarm that they obtain after arriving at work,

and it is not clear from the record whether they are paid for the time it takes to obtain a radio and

body alarm.  However, even assuming that deputies are off the clock when they receive a radio

and body alarm, it is undisputed that these items are issued "simultaneously with a deputy going

on duty."[7] Thus, the Court finds that the time spent obtaining a radio and body alarm is *de*

*minimis* and not compensable under the FLSA.  *See Anderson v. Mt. Clemens Pottery Co.*, 328

U.S. 680, 692, 66 S.Ct. 1187 (1946)("When the matter in issue concerns only a few seconds or

minutes of work beyond the scheduled working hours, such trifles must be disregarded."); *see*

*also* 29 C.F.R. § 785.47(stating in part that "recording working time under the Act, insubstantial

or insignificant periods of time beyond the scheduled working hours, which cannot as a practical

---

[7]*Compare* Def.s' St. Facts, docket entry #163, ¶19, *with* Plfs.' St. Facts, docket entry
#164, ¶ 19.

11

administrative matter be precisely recorded for payroll purposes, may be disregarded.").

In sum, the Court finds that the County is entitled to summary judgment on Plaintiffs' claim for compensation as to time spent donning uniforms and safety gear.

**3.      Volunteer Time**

The County moves for dismissal of Plaintiffs' claim for compensation for "hours during which . . . the plaintiffs were expected to volunteer"[8] on the ground that Plaintiffs have failed to offer specific allegations or supporting evidence.  In support of their renewed motion for summary judgment, Plaintiffs present copies of memos showing that in September 2000, twenty-one PCRDF employees responded to a lieutenant's request to volunteer their time to search for a canister of pepper spray.   Memos addressed to Plaintiffs Deputy Mae Wright and Kelvin Johnson from Major Shawn Smith state as follows:

> On Wednesday, September 20, 2000 you participated in a search of D-unit for a lost canister of OC. Although there was no money for overtime you voluntarily searched D-Unit on your time to help ensure no employee was seriously injured.  I appreciate your willingness to stay even though you knew there would be no overtime paid. Your unselfish act not only displayed a dedication to your co-workers' safety, but to the safety and security of the facility as well.

Docket entry #161, Exs. #3, #4.

The record is void of evidence of a *present* violation of the FLSA related to uncompensated volunteer time,[9] and Plaintiffs acknowledge that use of the term "volunteer time" is merely another way of saying "hours during which the Plaintiffs worked and did not receive

---

[8]Docket entry #157, at 7.

[9]Even assuming that Plaintiffs could show that the County willfully violated the FLSA, making the three-year statute of limitations applicable, any claims that accrued prior to January 30, 2006 (three years before Plaintiffs commenced this action) are time-barred.

compensation." Docket entry #177, at 34.  Given the lack of evidence to support a *specific*

claim for uncompensated volunteer time within the statute of limitations, the Court agrees that

no genuine issues for trial exist with respect to this claim.

>    **4.     Exempt, Executive Employees**

The County states that all plaintiffs with a rank of lieutenant or higher are classified as

executive employees and "should not be included in this lawsuit and should be considered

exempt employees under the FLSA."  Docket entry #183, at 7.

Plaintiffs acknowledge that the FLSA exempts certain employees from its overtime

protections, and they stipulate that any PCRDF employee  who holds the rank of lieutenant or

higher is exempt.   However, the Court has no basis for dismissing specific plaintiffs or claims

based on the executive exemption as Defendant provide no data regarding particular plaintiffs

who qualified as exempt employees during all or part of the relevant time period.

>    **5.     Claims for Straight Time (Non-Overtime Compensation**)

In addition to seeking overtime compensation allegedly due, Plaintiffs seek "straight

time" compensation, *i.e*., regular compensation for time worked under the overtime threshold of

171 hours in a twenty-eight-day period.   The County asserts that the Court lacks jurisdiction

over claims where the plaintiff in question did not work overtime.

The Court finds, as a matter of law, that Plaintiffs have no stand-alone claim for straight

time compensation.  *See Monahan v. County of Chesterfield, VA.,* 95 F.3d 1263, 1284 (4th Cir.

1996)("Absent a minimum wage/maximum hour violation, we find no remedy under the FLSA

for pure gap [straight] time claims."); *Arnold v. Arkansas*, 910 F. Supp. 1385, 1394 (E.D. Ark.

1995)(holding that claims for straight time pay for work periods when no overtime was worked

are not cognizable under the FLSA).   The remedial purpose of the FLSA simply does not reach employer obligations beyond the minimum wage and overtime requirements mandated under the Act.

However, the Court finds that a plaintiff can recover straight time compensation under the FLSA for pay periods in which he or she worked overtime.  A DOL regulation appearing at 29 C.F.R. § 778.315, entitled "*Payment for all hours worked in overtime workweek is required*," provides in part that "compensation for the excess hours of overtime work under the [FLSA] cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid."  29 C.F.R. § 778.315.   Because § 778.315 clearly provides that in order to comply with the FLSA's overtime compensation mandate, an employer must pay all straight time due, several courts have implicitly or explicitly recognized claims for unpaid straight time for pay periods when the employee has also worked overtime. *See Monahan v. County of Chesterfield,* 95 F.3d 1263, 1284 (4th Cir.1996)(inquiring whether straight time hours were paid when overtime hours were worked, thus implicitly recognizing a right to straight time compensation); *Helmert v. Butterball, LLC*, 2009 WL 5066759, at *14 (stating that under § 778.315 plaintiffs are entitled to recover all wages including wages for straight time if they have a claim for overtime); *Carter v. City of Charleston*, 995 F. Supp. 620, 621 (D.S.C. 1997)(holding that absent a violation of FLSA's overtime requirements, "pure gap time claims" are not cognizable under the FLSA); *Schmitt v. Kansas*, 864 F. Supp. 1051, 1061 (D. Kan. 1994) ("Read together, §§ 778.315 and 317 establish the principle that, in order to comply with the overtime requirements of the FLSA, an employer must pay at the regular rate

14

for all nonovertime hours worked in a period in which the employee also worked overtime."); *Reich v. Midwest Body Corp.*, 843 F. Supp. 1249, 1251-52 (N.D. Ill.1994)("Overtime pay, as required by the FLSA, has not been paid unless both straight time pay and overtime pay have been fully paid and have been paid based on an employee's regular pay.").

In this case, genuine issues of material fact exist as to whether the County failed to compensate Plaintiffs for overtime and thus, whether Plaintiffs are entitled to recover compensation for straight time.  Accordingly, no party is entitled to summary judgment on Plaintiffs' claims for straight time compensation.

6.   **Statute of Limitations**

The FLSA statute of limitations requires that claims for violations be "commenced within two years after the cause of action accrued," unless the violation was "willful."  29 U.S.C. §255(a).  If an employer's violation is willful, the Act extends the statute of limitations to three years.  *Id.*  An employer acts "willfully" when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe* Co., 468 U.S. 128, 132, 108 S. Ct. 1677, 1681 (1988).

The County and Plaintiffs seek a ruling as to whether a two-year or three-year statute of limitations applies in this case.  Plaintiffs assert that the County received notice of FLSA violations by way of employee complaints, and they present a letter received by the Sheriff's Department on July 9, 2009 from anonymous PCRDF employees, complaining that B-shift employees were "being cheated of overtime." *See* docket entry #161, Ex. #2.  Additionally, Plaintiffs argue that aforementioned memos regarding PCRDF employees "volunteering" their time to search for an OC canister evidences knowledge of FLSA violations.

The County argues:

> There can be absolutely no dispute that Pulaski County paid Plaintiffs all time to which they were entitled and, in some instances, paid Plaintiffs well in excess of the amount to which they were entitled.  All the time reported to Pulaski County was paid.  Therefore, Pulaski County asks this Court to limit Plaintiffs to the two year statute of limitations.

Docket entry #183, at 5.

For reasons previously stated, the Court finds that genuine issues of material fact exist as to Plaintiffs' claims for overtime based on an early-report requirement and missed lunch breaks.   Accordingly, it cannot be determined at this time whether the County committed a willful violation.  Furthermore, even if Plaintiffs had come forward with evidence sufficient to establish liability as a matter of law, the Court finds that the evidence presented fails to show that the County knew or had reckless disregard for whether the  PCRDF's early report requirement or PCRDF practices related to lunch breaks were prohibited under the FLSA.

**7.      Miscellaneous Arguments**

Plaintiffs argue that the County's motion for summary judgment "should be denied on its face" for failure to comply with Local Rule 56, which requires that a party moving for summary judgment submit a statement of the material facts as to which it contends there is no genuine issue to be tried.  Although the County failed to file a statement of undisputed facts along with its motion for summary judgment, it has now filed a statement in compliance with Local Rule 56.   Plaintiffs suffered no prejudice as a result of the County's oversight, and the Court finds no basis for denying the County's motion for summary judgment based on its failure to timely comply with Local Rule 56.

Next, Plaintiffs note that the County failed to file an answer to the second amended

16

complaint, and they maintain that the failure to answer "definitely mandates summary judgment in this case because said failure results in an admission of all of the facts alleged in the amended complaint."  Docket entry #161, at 3.   The County responds that its failure to file a timely answer to the second amended complaint was inadvertent, and it notes that the second amended complaint merely adds additional plaintiffs and contains the same allegations contained in the first amended complaint, which the County answered on time.   Additionally, the County requests leave to file an answer to the second amended complaint.

Federal Rule of Civil Procedure 6(b)(1)(B) permits the Court to extend the time for a party to submit a filing if the party failed to act because of excusable neglect.  See Fed. R. Civ. P. 6(b)(1)(B).  Excusable neglect is an "elastic concept" that permits a court to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control, and the determination of whether neglect is excusable is an equitable one.  *See Chorosevic v. MetLife Choices*, 600 F.3d 934, 946 (8th Cir. 2010)(citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392, 388, 113 S.Ct. 1489 (1993)).  Here, the County's failure to timely file a second amended complaint was inadvertent, and neither Plaintiffs nor the judicial proceedings will suffer as a result of the delay.  The Court finds that the County's failure stemmed from excusable neglect, and the Court will grant the County leave to file a late answer to the second amended complaint.

### III.  County's Motion for Decertification

The FLSA's opt-in collective action mechanism, codified at 29 U.S.C. § 216(b),  sets forth two requirements for the adjudication of claims as collective actions: (1) the plaintiffs must be "similarly situated" and (2) all party plaintiffs must give their written affirmative

consent to participate in the action.  *See id.*  Previously, the Court found that Plaintiffs made the minimal showing required for conditional certification of a collective action.[10] Subsequently, notice of the putative  collective action issued to potential plaintiffs, and Plaintiffs report that approximately 200 individuals have consented to join in this lawsuit.

Defendants move for decertification.  At this stage of the proceedings, the named plaintiffs must make a stronger showing to continue to proceed on a collective basis.   "If plaintiffs cannot make this stronger showing at the second stage, the conditionally certified class is decertified."  *Parler v. KFC Corp.*, 529 F. Supp. 2d 1009, 1011 (D. Minn. 2008)(internal citation omitted).  A variety of factors may be considered in determining whether a case is suited to proceed as a collective class action, including (1) disparate factual and employment settings of the individual plaintiffs, (2) defenses available to the defendant that appear to be individual to each plaintiff, and (3) fairness and procedural considerations. *See Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).

Defendants argue, among other things, that the complained-of practices apply to only a portion of the named and opt-in plaintiffs and that resolution of each claim for overtime will require an individualized, fact-based analysis.   For the reasons that follow, the Court agrees and finds that members of the conditionally certified class are not similarly situated as required

---

[10]In determining whether a particular case is suitable for collective action treatment, this Court, along with a majority of district courts in the Eighth Circuit, has adopted a two-stage approach.  At the first stage, a class is conditionally certified on a showing that the named plaintiffs are similarly situated to the potential collective action members.  Such a showing can be made with minimal evidence that the named plaintiffs and the potential plaintiffs were victims of a common policy or plan that may have violated the FLSA.  *See Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).  If conditional certification is granted, the court authorizes notice to potential plaintiffs, informing them of the opportunity to "opt in."

under § 216(b).

Defendants assert, and Plaintiffs do not dispute, that the proposed class members "run the gamut" from civilian employees to sworn officers.  Additionally, the pleadings and documents filed in this case reveal that the proposed plaintiff class includes employees from three different work shifts and several departments or units, all of which present disparate factual and employment settings that affect whether a given plaintiff takes a full lunch break. For example, Plaintiff Champion testifies that B shift employees seldom have the opportunity to take a break, but C shift is slower.  *See* docket entry #182, Ex. #1 at 9-10.  Furthermore, the record indicates that PCRDF employees do not as a general rule work through their *entire* 30-minute lunch break, but breaks are frequently cut short by work-related activities.  *See* docket entry #32, at 2.  In sum, the record indicates that the plaintiffs' individual experiences regarding missed lunch breaks vary from shift to shift and day to day and that Plaintiffs are not similarly situated with respect to this claim.

As for the early report requirement, the record reveals that not every PCRDF employee is required to report to work thirty minutes early.  Plaintiffs report that  Plaintiff Carolyn Redmon testifies that  "some" but not all deputies who work in the transport unit must report early for briefing,[11] and Plaintiff Champion testifies that as a sergeant, she is required to report to work one hour early to prepare for briefing.  *See* docket entry #182, Ex. #1, at 8.  Given these significant disparities, the Court finds Plaintiffs' claims for overtime based on an early report requirement are not suited for collective action treatment.

---

[11]See docket entry #157, at 12.  Plaintiffs quoted Redmon's testimony, but failed to provide a copy of deposition transcript.

The issues raised by the defenses asserted in this case include whether individual supervisors were aware that individual plaintiffs worked overtime, whether individual plaintiffs were exempt from FLSA overtime requirements for any period during the time under review, whether individual plaintiffs worked overtime without compensation, and whether the County is entitled to offsets under § 207(h)(2) as to individual plaintiffs.  Without question, resolution of  Plaintiffs' claims will involve consideration of personalized evidence and require significant individualized inquiry.  Under these circumstances, the Court finds that the interests of fairness and justice would not be served by attempting to adjudicate Plaintiffs' claims collectively.  Accordingly, the motion for decertification will be granted.

IT IS THEREFORE ORDERED that Defendant's motion for summary judgment (docket entry #146) is GRANTED IN PART AND DENIED IN PART.  Defendant's motion is granted to the extent that Plaintiffs' claims based on donning and doffing uniforms and volunteer time are DISMISSED WITH PREJUDICE.  Plaintiffs claims for compensation based on an early report requirement and missed lunch breaks remain.

IT IS FURTHER ORDERED that Plaintiffs' renewed motion for summary judgment (docket entry #160) is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for decertification (docket entry #151) is GRANTED.  The claims of opt-in plaintiffs are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED THIS 24TH  DAY OF AUGUST, 2010.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE